[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This lawsuit is the culmination of a longstanding dispute between members of a family engaged in the construction business in the Housatonic Valley Area. What was originally a part-time wood cutting operation evolved over a period of years into a full-fledged construction business concerned with site development, road and sewer construction and allied activities requiring the acquisition and use of heavy equipment consisting of trucks, bulldozers, backhoes, as well as the tools and machinery necessary to maintain such operations.
The principals involved in these activities were two brothers; Raymond Bartomeli, Jr., one of the defendants in this action; Thomas Bartomeli, a brother of Raymond and the plaintiff, and the late Raymond Bartomeli, the father of Raymond and Thomas. The commencement of activities between these three individuals which evolved into The Bartomeli Co. Inc., a co-defendant in this litigation, was in 1981. Over time the relationship between the parties deteriorated culminating in a lawsuit originally dated February 5, 1992, which lawsuit was dismissed for reasons not material to the resolution of this matter and subsequently reinstated under date of February 15, 1995.
The plaintiffs complaint consists of nine counts setting forth in the First Count the claimed actions, activities, representations which the plaintiff claims constituted fraud and misrepresentation entitling him to damages.
The subsequent counts essentially included the facts as set out in the First Count but claim differing causes of action and remedies.
The Second Count claims unjust enrichment and money damages.
The Third Count claims conversion and a right to multiple damages arising out of those facts.
The Fourth Count seeks an accounting from the inception of the business to the present.
The Fifth Count claims a constructive trust upon the assets of the defendant Bartomeli Company, Inc.
The Sixth Count claims a breach of contract on the part of the defendant Raymond Bartomeli in that the plaintiff and defendant were to share equally in the business as partners. CT Page 5529
The Seventh Count claims damages for services performed by the plaintiff which were unpaid by the defendants and for which the plaintiff should be compensated on the basis of quantum meruit.
The Eighth Count requests a partition of the assets of the corporation and a dissolution of The Bartomeli Co., Inc.
The Ninth Count requests an injunction against the defendant and corporation precluding the disposition of any of the assets of the corporation pending the outcome of this lawsuit.
During the course of the trial the plaintiff withdrew his claims set out in the Fourth Count (seeking an accounting) and the Ninth Count (injunctive relief). See plaintiff's post-trial brief dated January 29, 1999.
The defendants by revised answer dated July 31, 1998 essentially denied the allegations of the plaintiff's complaint and set out several special defenses as well as a counterclaim consisting of two counts. The First Count alleged actions on the part of the plaintiff essentially claiming conversion of certain of the defendant corporations equipment and the Second Count a claimed accord and satisfaction arrived at between the parties in July of 1991 which resolved all matters in dispute between the parties as set out in the plaintiff's complaint.
The trial of this matter took place over a period of thirteen days and needless to say presented a myriad of disputed facts and claims of the parties. The transcript of the testimony resulted in approximately 1470 pages over thirteen trial days commencing on July 14, 1998 and concluding on November 24, 1998. A brief overview of the history of the relationship and activities of the parties to this litigation would appear appropriate before analysis of the several claims of the plaintiff and counterclaims of the defendant corporation are undertaken.
In 1981 as mentioned previously, Raymond Bartomeli Jr., Raymond Bartomeli Sr. and Thomas Bartomeli were each employed by construction companies as equipment operators. At that time, there was a market for cordwood and it was decided by the three that some money could be made by cutting and delivering this product to customers. As a result, Raymond Jr. provided a truck body and this was equipped with a dump body by the parties. This CT Page 5530 business evolved into a small construction company utilizing a bulldozer purchased by Raymond Jr. The equipment list for the operations broadened to include a bucket loader and a trailer in order to move the equipment to different job sites. Early on as business increased, the plaintiff Thomas Bartomeli elected to leave his full-time employment and join forces with Raymond Jr. From time to time money was borrowed from Raymond Sr. and the boy's mother, Barbara Bartomeli, for the purchase of equipment and equipment was also financed from time to time by the defendant company. As work progressed, Thomas became not only an equipment operator but also was engaged in equipment repair and maintenance. Raymond Jr. became more and more involved in the financial affairs of the company as well as the field work. Thomas had little or no interest in anything but field work and equipment repair feeling that his brother was better educated and could tend to the "business end". From all of the evidence it appears that the two brothers and the father worked in concert as concerns the acquisition of equipment and at least during the early years after 1980. The business was incorporated as the Bartomeli Company, Inc. in 1983 and continued to grow over the years. In April 1991 there came a parting of the ways which ultimately led to this lawsuit At that point, the plaintiff was told that he had no interest in the company. Prior to that time, both Thomas and Raymond Jr. had put money into the company by contribution of individual assets, and co-signing on loans for equipment. It is the plaintiff's claim that he went from being a partner in the business to being simply an employee when in 1991 he was told by Raymond Jr. that he had no interest in the Bartomeli Company Inc. Raymond Jr. had over time become dissatisfied with Thomas' performance as part of the business endeavors. He felt he was irresponsible and that he didn't want to work. He was demanding more income and was unable to meet his own financial obligations. On April 19, 1991 Thomas presented himself at the company office and demanded a blank check from the secretary. When Raymond was advised of this he fired Tom. At about the same time Raymond discovered a piece of equipment on Tom's premises which Tom had previously reported to the police as "stolen" and for which the insurer had paid the Bartomeli Company a considerable sum. This discovery was reported to the insurance carrier. See Plaintiff's Ex. 28. Tom also had several instances of careless operation of equipment resulting in loss or damage to the company as the record indicates. Tom was removed as secretary of the corporation on January 17, 1991 and as vice-president on April 22, 1991 [P. Exhs. 85 and 86]. The corporation had been experiencing severe financial problems toward the end of the CT Page 5531 1980s and had been dissolved by the Secretary of State [P. Ex. 67] for failure to file annual reports. Raymond Jr. contemplated bankruptcy for the corporation and in order to do this received an attorney's advice that reinstatement was necessary for him to proceed. In October 1990 [P. Ex. 70] office manager Luann Sepelak (who later became known as Luann Maraglino) feeling that the company could become a profitable ongoing construction company, was interested in becoming a shareholder. She subsequently obtained a controlling interest in the company [P. Exhs. 70 and 88] in exchange for a cash infusion of $50,161.28 on September 30, 1991. Tom was officially an ex-employee of the defendant company as of April 26, 1991 [P. Ex. 93]. Immediately prior to this on April 20, 1991 Tom, knowing that his connection with the company was at an end, made certain demands on Raymond Jr. that he either wanted a 50 percent interest in the company or certain of the equipment owned by the company so he could start up his own construction business. [P. Ex. 95] A list of the equipment owned by the company and stored on Tom's property was compiled [P. Ex. 100]. It had been the practice of the defendant corporation to store the company's equipment on Tom's property. Since Tom had available land and since he was the individual in the company who primarily did the maintenance and repair, this was considered to be a most reasonable practice for the corporation to follow. To accommodate this activity, the company erected a prefabricated building on Tom's property. This has become Tom's property with no financial contribution on his part. The evidence was that the erection of this building on Tom's property substantially enhanced the value of Tom's real estate at this location to the extent of approximately $150,000 according to the testimony of Raymond Jr.
At this point, a list of equipment owned by Bartomeli Company Inc. was drawn up after discussion between Raymond Bartomeli Sr., Raymond Jr. and Thomas. It was agreed according to the testimony that certain items of equipment were to be given over to Thomas [P. Ex. 105] free and clear. Some of this equipment Raymond removed from the premises in order to finish certain work under way by the company and it is the plaintiff's claim that some of it was not returned. This was after Raymond went to Tom's premises to get certain equipment necessary for the completion of a contract but Tom refused to allow him to take it off the premises. Raymond then sought the assistance of the Shelton Police to regain possession so the company could complete the job. As a result of this delay, the company was forced to give up the job and consequently lost money. CT Page 5532
During the trial it was the claim of the defendants through Raymond's testimony that Thomas was never more than an employee of the company. Tom, on the other hand, assumed he was a partner in the business before and after the incorporation in 1983. Since Tom had little or no business education and little or no interest in the business affairs of the corporation he did nothing to ascertain his actual status as the years went by. However, there were a number of witnesses who testified that Raymond often introduced Tom has his partner and since the brothers started off in somewhat of a family relationship in the woodcutting business and later with Tom giving up his outside employment to join his brother full-time, it was probably reasonable for Tom to presume he was something more than an employee. This belief would reasonably be strengthened when Tom and Raymond jointly signed notes regarding purchase of equipment for use in the corporations' construction activities. The court does not propose to present any detailed analysis of the many financial transactions between the parties and other institutions in order to attempt to ascertain with precision the respective interests of the parties as to the equipment in the possession of the respective litigants, assuming that this would even be possible. Suffice it to say that there were many transactions involving equipment purchase and repairs with money, time and debt obligations contributed by all members of the Bartomeli family, all intended to benefit the financial objectives of the business.
There was considerable evidence offered including expert testimony concerning the corporate structure of The Bartomeli Company, Inc. after its incorporation in 1993. While Thomas was an officer of the corporation he was never a shareholder according to the evidence and it is difficult to conclude that any claimed shortcomings in the official operation of the corporation could be the basis of any damage to one not a shareholder.
Turning to the several counts of the complaint upon which the plaintiff claims a right to recovery, the First Count is grounded upon alleged misrepresentation and fraud. The court assumed this count to be based upon fraudulent misrepresentation. A claim of fraudulent misrepresentation must be established by evidence exceeding the usual standard of proof in a civil action; not by a preponderance of the evidence, but rather by clear and convincing evidence tending to establish a deliberate intent to mislead one to their injury. The evidence offered to the court in this CT Page 5533 connection does not rise to the level of proof required to support the plaintiff's claim. The plaintiff over the period of time during which the Bartomeli family conducted its construction activities was intimately familiar with the operations of the company, at least insofar as he was interested, and the court cannot conclude that the plaintiff was the victim of any action on the part of Raymond Bartomeli either individually or as president of the corporation which could be considered to rise to the level of fraud. Accordingly, the court concludes that the evidence offered does not support the claims alleged in the First Count.
 Second Count
The Second Count is grounded in unjust enrichment. Because this court will later conclude that the plaintiff is entitled to a recovery against the defendants based upon a breach of contract there is no basis for the court to consider a claim of unjust enrichment as such a claim presupposes no other lawful remedy to correct an injustice. Additionally, this claim of law contemplates that the defendant(s) received something of value from the plaintiff for which the plaintiff was not compensated. The record indicates that the plaintiff was regularly entered on the books of the corporation as receiving compensation for his contributions.
 Third Count — Conversion
In this count the plaintiff claims that the defendants or either of them usurped the plaintiff's rights as to ownership and possession of certain equipment used by the business in pursuit of its business activities. In order to recover under a claim of conversion, it is essential that a plaintiff demonstrate a right to possession superior to the person holding the object or objects claimed to have been converted. From the record, the court cannot conclude that the plaintiff enjoyed a superior right to the items claimed to have been converted. Ownership of many items was vigorously contested by the parties and the proof offered falls short of demonstrating by a preponderance of the evidence from which the court could reasonably conclude that the plaintiff had any rights to the items claimed that were superior to the defendants.
 Fourth Count — Accounting
CT Page 5534
This claim has been withdrawn by the plaintiff.
 Fifth Count — Constructive Trust
In this count, the plaintiff claims that the evidence offered during the trial and according to the allegations of the complaint support his demand that the defendants should be held to be possessing the assets of the corporation in a constructive trust for the benefit of the plaintiff, if not in full, at least in part. The imposition of a constructive trust for the benefit of a claimant requires a finding by the court that there existed a confidential relationship between the involved parties. The evidence must demonstrate in a clear and convincing fashion that such a fiduciary relationship existed between Thomas and Raymond Jr.
The evidence suggests only that the two brothers were engaged jointly in a business enterprise in which both parties pursued jointly and at times severally their own interests.
 Sixth Count — Breach of Contract
The court will consider this count as the last matter to be discussed in this memorandum.
 Seventh Count
The Seventh Count is based upon Quantum Meruit. As the court noted as regards the Second Count, the court considers that there was a breach of contract on the part of the defendants giving rise to this litigation and a right to recover in quantum meruit is available only in the absence of a finding that a contract, express or implied, existed between the parties.
 Eighth Count — Dissolution and Partition
While the court considers this count abandoned because of the failure of the plaintiff to adequately brief the issues presented for determination, Willow Springs v. Seventh BRT DevelopmentCorp. , 245 Conn. 1, 38, the court would note that as to dissolution one must be a shareholder in order to pursue this remedy against a corporation. No evidence was presented to suggest that the plaintiff was ever a shareholder of the defendant corporation. CT Page 5535
 Sixth Count — Breach of Contract
Returning to a consideration of the Sixth Count, it is the plaintiff's claim that the original plans of Thomas and Raymond Bartomeli Jr. were to operate as a partnership and share equally in the gains of the business entity entered into in the early 1980s. It was started as a woodcutting business utilizing the services of Thomas, Raymond Jr. and Raymond Bartomeli Sr. All members of the family were engaged in the construction trade, mainly site work on their part for various employees. Each owned machinery and equipment on their own for projects independent of their regular employment. Due to circumstances not requiring elaboration herein, Thomas quit his job and came to work with Raymond who had registered The Bartomeli Company as a trade name. The business was later incorporated as The Bartomeli Co., Inc. and Thomas was named as a director. At this point, the company had acquired more equipment in order for it to pursue its construction work. The equipment came from Raymond Jr. on his own account and also purchased with loans obtained from Raymond Sr. and Barbara Bartomeli. Thomas also had some equipment and also put in considerable time repairing equipment utilized for the company's construction work. Over time, Thomas became a co-maker on notes to acquire equipment and also obtained money from his girlfriend to purchase equipment which was held in the name of the corporation. It is also significant as regards to the business relationship between the two brothers that a number of persons with whom the parties did business regarded Thomas and Raymond Jr. as partners and the evidence suggests that often Raymond would introduce Thomas as "my partner". Thomas had a right to believe that he was a partner of Raymond and always had been, While Raymond testified that Thomas was never anything more than an employee. However, the evidence indicates that Thomas personally guaranteed $110,000 for an Ackerman backhoe for use by the business as well as $25,000 for the purchase of a Kenworth tractor. When the parties got to the breakup stage in April 1991, the parties agreed to a division of company equipment which represented significant value and was certainly indicative of something more than the simple termination of an employer-employee relationship. Having determined that Thomas and Raymond Jr. were at least "de facto" partners with no written agreement at the time they came to a parting of the ways in April 1991 and with the court unable from the conflicting and abundant evidence of each partner's contributions over the years to determine the specific interest of each partner, the court concludes that at that point in time the partners each had a CT Page 5536 fifty percent interest in the business in terms of entitlement to non-tangible assets.
As to the division of tangible assets, probably the fairest determination that can be made by the court would be by referring to the agreement reached between the parties as set out in Plaintiff's Exhibit 105 dated July 17, 1998. This compilation was testified to by Thomas Bartomeli as reported in the Transcript for Day 10, P. 1238. From the exhibits offered in evidence and the testimony, it is not clear to the court precisely what equipment Thomas retained possession of and which he should have had delivered to him. The court concludes from an examination of Defendant's Exhibit 47, Plaintiff's Exhibit 105 and the relevant testimony and the brief submitted by the plaintiff (January 29, 1999 p. 19) that the following items and their value as set out in Plaintiff's Exhibit 40 were not turned over to the plaintiff as agreed:
 1. 1988 Read Screener $40,000 2. 1967 Mack DM600 8,000 3. 580 Case with hammer 31,000 4. 955K with bucket loader 15,000
Total $94,000
The court concludes that the plaintiff should receive damages in that amount pursuant to the agreement of the parties which amount represents the division of the physical assets.
The plaintiff as an equal partner is entitled to compensation for his interest in what was at that time a going business. The balance sheet compiled as of March 31, 1991 [P. Ex. 82E] reflected a net worth of assets over liabilities of $337,845. The balance sheet of June 30, 1991 reflected a net worth of $465,226. [P. Ex. 82F] Since the dissolution of the partnership occurred between these two dates the average net worth for that date would be $401,535. The court concludes that the plaintiff is entitled to $200,767 of that amount as his fifty percent interest.
Since the value of the business is not simply limited to the value of its tangible assets over its liabilities but also includes some value as a going business to which both parties contributed, the plaintiff is also entitled to compensation for that element of his interest. The court determines this intangible to be $100,000 of which the plaintiff is entitled to CT Page 5537 $50,000.
Accordingly, the plaintiff is entitled to recover of the defendants or either of them the total amount of $344,767.
As against this amount, the defendant claims damages in a two-count counterclaim. The first count claims that the plaintiff at the time of the breakup refused to surrender possession of certain pieces of equipment necessary for completion of work in progress resulting in the inability of the defendant company to complete a contract with a resultant loss. The court finds the defendant is entitled to damages of $8,500 as testified to by LuAnn Maraglino and as represented by Defendant's Exhibit 35 and 36.
As to the items set forth in the second to which the defendant claims a right of ownership and the failure of the plaintiff to turn over to the defendant the court is unable to determine from the record or the brief submitted by the defendant the location or value of these items and consequently finds that the defendant has failed to prove the elements of this count by a fair preponderance of the evidence and so finds for the plaintiff in connection with the second count.
Accordingly, the court finds in favor of the plaintiff damages in the amount of $344,767 and in favor of the defendants in the amount of $8,500.
George W. Ripley Judge Trial Referee